IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI

UNITED STATES OF AMERICA

v.  CRIMINAL CASE NO. 3:10-CR-163-SA

ANGELA BRYSON MILLER and
STARLET KIZER  DEFENDANTS

ORDER

Angela Bryson Miller and Starlet Kizer have filed separate Motions to Reduce Sentence [345, 366]. Although they filed separate Motions [345, 366], they are represented by the same counsel and their arguments are the same. The Government opposes their requests. On March 18, 2025, the Court held an evidentiary hearing, during which it heard arguments and accepted evidence on the relevant issues. Having considered the parties' written submissions and the arguments and evidence presented at the hearing, as well as the applicable authorities, the Court is prepared to rule.

*Relevant Background*

On November 17, 2010, Miller and Kizer, along with three other co-defendants, were charged in a four-count Indictment [1]. The charges stemmed from two different bank robberies—one that occurred at Slayden Bank in Lamar, Mississippi on May 19, 2010 and one that occurred at Citizens Bank in Byhalia, Mississippi on June 10, 2010. For their roles in the robberies, Miller and Kizer were both charged with two counts of aiding and abetting bank robbery (one for each robbery) in violation of 18 U.S.C. § 2113 and two counts of aiding and abetting in the brandishing of a firearm in furtherance of a crime of violence (armed robbery) in violation of 18 U.S.C. § 924(c).

Miller and Kizer's co-defendants, Brian Gilliland, Marcus Westbrook, and William Albright, all pled guilty. Miller and Kizer did not—they went to trial.

The jury found Miller guilty on Count Two (aiding and abetting in the brandishing of a firearm in furtherance of the Slayden Bank robbery) and Count Four (aiding and abetting in the brandishing a firearm in furtherance of the Citizens Bank robbery). She was acquitted on Counts One and Three—the aiding and abetting bank robbery counts.

Kizer was acquitted on Count One (aiding and abetting bank robbery in connection with the Slayden Bank robbery) but convicted on the other three counts.

Of critical importance for purposes of the present filings is that both Miller and Kizer were convicted on *both* of the § 924(c) charges. As will be explained more fully hereinafter, the § 924(c) convictions are significant because, at the time of their sentencings in 2012, courts were required to "stack" the sentences for the § 924(c) convictions without discretion. The first conviction triggered a 7-year minimum sentence and the second conviction triggered a consecutive 25-year sentence.

The Court sentenced Miller as follows: 84 months on Count 2 (statutory minimum) and 300 months on Count 4 (statutory minimum) to be served consecutively for a total term of imprisonment of 384 months. *See* [148]. Kizer's sentence was similar: 84 months on Count 2 (statutory minimum); 1 month on Count 3; and 300 months on Count 4 (statutory minimum) to be served consecutively for a total term of imprisonment of 385 months. *See* [150].

As noted previously, Miller and Kizer now seek sentence reductions. The Government opposes any reduction whatsoever.

*Analysis and Discussion*

"A judgment of conviction, including a sentence of imprisonment, constitutes a final judgment and may not be modified by a district court except in limited circumstances." *United States v. Alana*, 2024 WL 4900021, at *1 (N.D. Miss. Nov. 26, 2024) (citations and internal quotation marks omitted); *see also United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021) ("The general rule is that 'court[s] may not modify a term of imprisonment once it has been imposed.'") (quoting 18 U.S.C. § 3582(c)). While a district court's authority to modify a sentence of imprisonment is certainly limited, 18 U.S.C. § 3582(c)(1)(A) provides such authorization. *See Thompson*, 984 F.3d at 433.

As pertinent here, a district court may, consistent with Section 3582(c), modify a previously imposed term of imprisonment if: (1) "extraordinary and compelling reasons warrant such a reduction," (2) "a reduction is consistent with the applicable policy statements issued by the Sentencing Commission," and (3) "after considering the factors set forth in section 3553(a)." 18 U.S.C. § 3582(c)(1)(A)(i), (2).

I.     *Relevant History of 18 U.S.C. § 924(c)*

Before addressing the parties' specific arguments, some explanation of the history of the changes in the statute at issue—18 U.S.C. § 924(c)—is needed. Under that statute, an individual who is convicted of brandishing a firearm in relation to any crime of violence or drug trafficking crime shall, in addition to the punishment for the underlying crime, be sentenced to a term of imprisonment of not less than 7 years. 18 U.S.C. § 924(c).[1] For a second § 924(c) conviction, an

---

[1] If the firearm is simply possessed in furtherance of the underlying crime, the minimum statutory penalty is 5 years. *See* 18 U.S.C. § 924(c). And the minimum statutory penalty is 10 years if the firearm is discharged. *Id*.

enhanced statutory penalty of not less than 25 years is applicable. *Id*. The statute mandates that these imprisonment terms run consecutively. *Id*.

Critically, at the time of Miller and Kizer's sentencing hearings, the Supreme Court's interpretation of 18 U.S.C. § 924(c) in *Deal v. United States*, 508 U.S. 129, 113 S. Ct. 1993, 124 L. Ed. 2d 44 (1993), was controlling. In *Deal*, the Supreme Court held that a defendant convicted of two 18 U.S.C. § 924(c) offenses *in the same case* was subject to the enhanced second conviction penalty. *Id*. at 132-34. Particularly pertinent to Miller and Kizer, the Supreme Court in *Deal* rejected the defendant's contention that the first conviction must be final before the mandatory, enhanced second conviction penalty became applicable. *Id*.

The Supreme Court's interpretation of § 924(c) in *Deal* governed until it was statutorily superseded by Congress in the First Step Act of 2018. *See United States v. Gomez*, 960 F.3d 173, 176 (5th Cir. 2020). "The First Step Act of 2018 was signed into law on December 21, 2018, introducing a number of criminal justice reforms." *Id.* (quoting *U.S. v. Hegwood*, 934 F.3d 414, 416 (5th Cir. 2019)). Among other things, the First Step Act amended the language of 18 U.S.C. § 924(c), making clear that the second conviction penalty only applies when the second conviction "occurs after a prior conviction under this subsection has become final[.]" 18 U.S.C. § 924(c). Specifically, 18 U.S.C. § 924(c) now provides in pertinent part:

> (C) In the case of a violation of this subsection that *occurs after a prior conviction under this subsection has become final*, the person shall--
> (i) be sentenced to a term of imprisonment of not less than 25 years; and
> (ii) if the firearm involved is a machinegun or a destructive device, or is equipped with a firearm silencer or firearm muffler, be sentenced to imprisonment for life.

18 U.S.C. § 924(c)(1)(C) (emphasis added).

4

Prior to the First Step Act, the language of 18 U.S.C. § 924(c), which was relied upon by the Supreme Court in *Deal* and which this Court followed in imposing Miller and Kizer's sentences, applied to any "second or subsequent conviction under the subsection." 18 U.S.C. § 924(c)(1)(C)(i) (2006), amended by First Step Act § 403, Pub. L. No. 115-392, 132 Stat. 5194, 5222; *see also Gomez*, 960 F.3d at 176.

As a result of this change, Miller and Kizer would face significantly different mandatory minimum sentences if sentenced today. Because the first § 924(c) conviction was not final at the time of their second offense, they would each be subject to two 7-year consecutive statutory minimums. The enhanced penalty would not apply. Thus, the total statutory minimum sentence for both Miller and Kizer, if sentenced today, would be 14 years (7 years on Count Two and 7 years on Count Four). This is quite different when compared to the 7-year and 25-year consecutive statutory minimums that they faced at their sentencings in 2012.[2]

While the First Step Act enacted these significant modifications to Section 924(c), Congress did *not* make those modifications retroactive. *See*, *e.g.*, *United States v. Francois*, 2025 WL 1042842, at *6 (E.D. Tex. Apr. 4, 2025) ("Congress, however, explicitly made the change to 18 U.S.C. § 924(c)(1) non-retroactive."); First Step Act, Pub. L. No. 115-392, 132 Stat. 5194, 5222 ("This section . . . shall apply to any offense that was committed before the date of enactment of this Act, *if a sentence for the offense has not been imposed* as of such date of enactment.") (emphasis added).

In opposing the requested reductions in this case, the Government emphasizes and relies heavily on the non-retroactive nature of the First Step Act. Conversely, Miller and Kizer contend

---

[2] Notably, Kizer was also convicted of the substantive robbery offense (Count 3) so the Court would impose a sentence on that conviction as well. The Court sentenced Kizer to one month on that conviction at her original sentencing.

5

that the First Step Act's non-retroactivity does not bar the relief they now seek and that the Court can nevertheless consider the change in law in its analysis under the compassionate release statute.

   *II.*   *Extraordinary and Compelling Reasons*

  Against that backdrop, the Court turns to the "extraordinary and compelling" prong of the compassionate release analysis. Again, this is the first of three conditions that must be satisfied to justify compassionate release. *See United States v. Jackson*, 27 F.4th 1088, 1089 (5th Cir. 2022).

  The Fifth Circuit has described this prong of the compassionate release analysis as "notoriously thorny." *United States v. Jean*, 108 F.4th 275, 278 (5th Cir. 2024) (quoting *United States v. Shkambi*, 993 F.3d 388, 391 (5th Cir. 2021)). At least in part, this is because "Congress never defined or provided examples of 'extraordinary and compelling reasons' that might warrant a reduction. Instead, it delegated that authority to the Sentencing Commission." *Shkambi*, 993 F.3d at 391. Exercising that delegated authority, the Sentencing Commission enacted Sentencing Guideline § 1B1.13 to provide guidance on the "extraordinary and compelling reasons" analysis. *See Jean*, 108 F.4th at 278. In its commentary to § 1B1.13 made effective on November 1, 2006, the Commission set forth four categories of circumstances that might be considered extraordinary and compelling—specifically, "(1) medical conditions of the defendant; (2) age of the defendant; (3) family circumstances; and (4) other reasons." *Id*. (citing U.S.S.G. § 1B1.13 (effective Nov. 1, 2006)).

  It is also noteworthy that prior to 2018, compassionate release motions could only be presented to the district courts by the Bureau of Prisons on a criminal defendant's behalf—not directly by the defendant. *Id*. (citing *Shkambi*, 993 F.3d at 391). The First Step Act changed this dynamic by specifically authorizing criminal defendants to move for compassionate release on

6

their own behalf. *See Shkambi*, 993 F.3d at 391-92 (quoting modified language of 18 U.S.C. § 3582(c)(1)(A)).

While the First Step Act authorized this relatively drastic change in the compassionate release dynamic, the Sentencing Commission did not have a quorum from early 2019 through 2022 and therefore could not provide guidance regarding the motions brought directly by the defendants. *See Jean*, 108 F.4th at 278-79 (quoting U.S. Sentencing Guidelines Manual Supplement, App. C at 204-05) ("Because the Commission lost its quorum in early 2019 and did not regain it until 2022, it was unable to amend § 1B1.13 during the more than four-year period since defendants were first permitted to file such motions.").

After regaining a quorum, the Sentencing Commission provided additional guidance by amending Section 1B1.13. The current version of Section 1B1.13, which became effective on November 1, 2023, "now contains a non-exclusive list of six extraordinary and compelling reasons within the policy text itself[.]" *United States v. Brown*, 2025 WL 1285679, at *3 (S.D. Miss. May 2, 2025) (citing U.S. Sentencing Guidelines Manual Supplement, App. C at 200-210). Of particular import for this case is Section 1B1.13(b)(6), which states that an "unusually long sentence" can be taken into account in the compassionate release analysis. The subsection provides:

> UNUSUALLY LONG SENTENCE.
> If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b)(6).

On its face, Section 1B1.13(b)(6) seems to directly support Miller and Kizer's position, as they have served more than 10 years of the imposed term and the First Step Act constitutes a change in the law which would significantly decrease the penalty that they would face if sentenced today. However, further context is needed, including a further explanation of the development of the case law prior to Section 1B1.13(b)(6)'s effective date.

Prior to November 1, 2023, one issue that arose relatively frequently in these types of motions was whether a non-retroactive change in the law could be considered an extraordinary and compelling reason to support compassionate release. *Jean*, 108 F.4th at 279. Courts split on this issue with the First, Fourth, and Ninth Circuit concluding that a non-retroactive change in the law is a proper consideration and the Third, Seventh, and Eighth Circuits reaching the opposite conclusion. *Id*. (collecting cases).

With that overarching history in mind, the Court turns to the specific guidance that the Fifth Circuit has provided on this topic beginning with two cases decided in 2023 but prior to November 1, 2023.

First, the Court looks to the January 2023 decision in *United States v. Escajeda*, 58 F.4th 184 (5th Cir. 2023). There, the defendant, Michael Escajeda, pled guilty to three drug distribution counts in violation of 21 U.S.C. §§ 841(a) and 846, and to one felon in possession of a firearm count in violation of 18 U.S.C. § 922(g). *Id*. at 186. At his sentencing, the district court imposed a within-Guidelines 162-month imprisonment term. *Id*. On appeal, the Fifth Circuit affirmed Escajeda's sentence but remanded only for correction of a scrivener's error in his supervised release term. *Id*. Five days after the Fifth Circuit affirmed the sentence on direct appeal, the district court denied Escajeda's motion for compassionate release, which he had filed while the direct

appeal was pending. *Id*. Escajeda then appealed the denial of his request for compassionate release. *Id*.

As phrased by the Fifth Circuit, the crux of Escajeda's argument for compassionate release was that "his sentence exceeded the statutory maximum and that he received ineffective assistance of counsel." *Id*. at 187. Considering the nature of Escajeda's request, the Fifth Circuit held that it was actually one for habeas relief—not compassionate release. *Id*. The court explained that "[i]n Chapter 153 of Title 28, Congress provided specific avenues for post-conviction relief that permit prisoners to challenge the legality of their confinement in federal court. The Supreme Court has repeatedly held that by codifying these specific provisions, Congress *required* prisoners to bring their legality-of-custody challenges under Chapter 153 and *prohibited* prisoners from bringing such claims under other, more-general statutes like 42 U.S.C. § 1983." *Id*. at 186-87 (citing 28 U.S.C. §§ 2241, 2244, 2254, 2255) (emphasis in original). Then, citing a case from the D.C. Circuit, the Fifth Circuit explained that "[D.C. Circuit] Judge Katsas has astutely referred to this as the 'habeas-channeling rule' and held it likewise 'forecloses using compassionate release to correct sentencing errors.'" *Id*. at 187 (quoting *United States v. Jenkins*, 50 F.4th 1185, 1202 (D.C. Cir. 2022)). Ultimately, the Fifth Circuit rejected Escajeda's compassionate release motion and specifically held that "a prisoner cannot use § 3582(c) to challenge the legality or the duration of his sentence; such arguments can, and hence *must*, be raised under Chapter 153." *Id*. (emphasis in original).

A few months later, in June 2023, the Fifth Circuit issued an unpublished opinion in *United States v. McMaryion*, 2023 WL 4118015 (5th Cir. June 22, 2023).[3] There, the defendant, Jeffrey McMaryion, pled guilty to conspiracy to possess with intent to distribute cocaine and eventually

---

[3] The *Escajeda* and *McMaryion* opinions were issued by the same three-judge panel.

9

received a low-end Guidelines sentence of 262 months imprisonment. *Id*. at *1. After his sentence was affirmed on direct appeal, McMaryion filed a motion for compassionate release, which the district court denied in a one sentence order. *Id*.

On appeal, the Fifth Circuit first rejected McMaryion's substantive challenges to the legality of his sentence based on the habeas-channeling rule, explaining that "because these claims are cognizable under 28 U.S.C. § 2255, they are not cognizable under 18 U.S.C. § 3582(c)." *Id*. (citing *Escajeda*, 58 F.4th at 186-88). The court then turned to McMaryion's argument that "he should get a sentence reduction because the First Step Act reduced the statutory minimums applicable to his case." *Id*. at *2. The Fifth Circuit also rejected this argument, specifically emphasizing that "Congress did not make those reductions retroactive. And a prisoner may not leverage non-retroactive changes in criminal law to support a compassionate release motion, because such changes are neither extraordinary nor compelling." *Id*. (citing *Jenkins*, 50 F.4th at 1198-1200; *United States v. McCall*, 56 F.4th 1048, 1065-66 (6th Cir. 2022)).

*Escajeda* and *McMaryion* both indicate that prisoners cannot utilize a non-retroactive change in law to justify compassionate release. But, again, the Court notes that both of those cases were decided prior to the effective date of Section 1B1.13(b)(6).

Turning to cases decided after Section 1B1.13(b)(6)'s effective date, the Court first looks to the Fifth Circuit's June 2024 decision in *Jean*, 108 F.4th 275.[4] There, the defendant, Joel Jean, pled guilty to conspiracy to possess with intent to distribute cocaine and possession of a firearm in furtherance of a drug-trafficking offense. *Id*. at 279. Jean was classified as a career offender

---

[4] To be clear, the Court is aware that the district court's decision in *Jean* was decided prior to November 1, 2023, and the Fifth Circuit therefore did not explicitly rely on Section 1B1.13(b)(6) in reaching its conclusion. But the court did expound upon Section 1B1.13(b)(6) in some detail and ultimately explained that it took "note of the deference given to the Sentencing Commission by both Congress and the Supreme Court and [found] only that the Sentencing Commission's resolution of the circuit split further supports the conclusion we reached above." *Jean*, 108 F.4th at 290.

10

pursuant to Sentencing Guideline Section 4B1.1 and faced a guideline imprisonment range of 352 to 425 months. *Id*. At sentencing, the district court varied downward and sentenced Jean to 292 months. *Id*. In the years after Jean's sentencing, a series of cases from the Supreme Court and Fifth Circuit redefined what could be considered a "controlled-substance offense" for purposes of § 4B1.1. *Id*. at 279-80 (citations omitted). As a result of those subsequent cases, "it is undisputed that if [Jean] were to be sentenced today, [he] would not be classified as a career offender under § 4B1.1." *Id*. at 280.

Jean sought compassionate release, arguing, among other things, that non-retroactive changes in the law (the subsequent Supreme Court and Fifth Circuit decisions) would result in him receiving a substantially shorter sentence than he received at his original sentencing years prior. *Id*. The district court noted that Jean's sentencing range, if sentenced in 2023, would be drastically lower—approximately 160 to 185 months. *Id*. The district court ultimately granted Jean's request and modified his sentence to time-served, specifically holding that "non-retroactive changes in sentencing law may constitute extraordinary and compelling reasons warranting compassionate release when other factors, such as the defendant's rehabilitation, are also present." *Id*. at 281.

On appeal, the Fifth Circuit identified the specific issue before it as follows: "does a sentencing court have the discretion to hold that non-retroactive changes in the law, when combined with extraordinary rehabilitation, amount to extraordinary and compelling reasons warranting compassionate release?" *Id*. Ultimately, in a divided decision, the panel majority answered this question in the affirmative. *Id*. In so doing, the majority emphasized the broad discretion that district courts possess in sentencing matters and noted that Congress has "*never* wholly excluded the consideration of any factors. Instead, it appropriately affords district courts the discretion to consider a combination of any factors particular to the case at hand." *Id*. at 284

11

(quoting *United States v. Chen*, 48 F.4th 1092, 1098 (9th Cir. 2022)) (emphasis in original; quotation marks omitted). The majority continued:

> And Congress, in drafting the compassionate release statute, expressly contemplated that "unusually long sentences" or situations where "the sentencing guidelines of the offense of which the [defendant] was convicted have been later amended to provide a shorter term of imprisonment" may serve as extraordinary and compelling reasons. S. REP. NO. 98-225, at 55-56 (1983). As stated in *Chen*, "though Congress did not end up expressly permitting the consideration of unusually long sentences or changes in sentencing law"—or any examples for that matter—"it also did not expressly prohibit it." *Chen*, 48 F.4th at 1099.

*Id*.

Then, distinguishing *Escajeda*, the majority noted that the habeas-channeling rule did not bar Jean's requested relief: "Unlike in *Escajeda*, Jean did not argue that his original conviction was imposed in violation of the Constitution or the laws of the United States. Rather, Jean argued that his sentence is now unjustly long following the [Supreme Court and Fifth Circuit] decisions . . . That a sentence is unfairly long in light of the current state of the law does not necessarily imply the invalidity of . . . Jean's sentence." *Id*. (citations and quotation marks omitted). The majority also rejected the Government's reliance on *Escajeda* insofar as *Escajeda* held that non-retroactive changes in the law by their very nature cannot be extraordinary because they impact all prisoners sentenced under that particular law. *Id*. The *Jean* majority explained: "We read *Escajeda* to require that the extraordinary and compelling reasons for compassionate release, *as a whole*, must be unique to the life of the prisoner." *Id*. (citation omitted; emphasis added). Ultimately, the majority concluded that it is "within a district court's sound discretion to hold that non-retroactive changes in the law, in conjunction with other factors such as extraordinary rehabilitation, sufficiently support a motion for compassionate release." *Id*.

Judge Smith dissented, specifically referring to the majority's opinion as "a horrifying violation of this court's well-respected rule of orderliness." *Id*. at 291 (Smith, J., dissenting). Judge Smith emphasized that the compassionate release statute itself mandates that the prisoner seeking relief establish the existence of extraordinary and compelling reasons and then opined that "[a] change in law applies to all prisoners equally and thus cannot be unique to the life of the prisoner." *Id*. at 292 (citing *Escajeda*, 58 F.4th at 186). According to Judge Smith, "[t]hat means Congress did limit a district court's discretion by using the word 'extraordinary,' and—in the view of our circuit and others—that limit prevents district courts from considering non-retroactive changes in law when adjudicating a motion for compassionate release." *Id*. Judge Smith also explained that *Jean* violated the rule of orderliness as it was in contradiction with *Escajeda* and *McMaryion*, along with two other panel decisions in *United States v. Elam*, 2023 WL 6518115, at *1-2 (5th Cir. Oct. 5, 2023) and *United States v. Cardenas*, 2024 WL 615542, at *2 (5th Cir. Feb. 14, 2024). *Id*. at 294. Finally, Judge Smith acknowledged that Section 1B1.13(b)(6) did not govern Jean's appeal since the district court's decision pre-dated its enactment. *Id*. at 296. But he did opine that Section 1B1.13(b)(6) is itself invalid as beyond the Sentencing Commission's authority:

> The Sentencing Commission cannot overrule circuit precedent interpreting a statutory provision. *United States v. Koons*, 850 F.3d 973, 979 (8th Cir. 2017) (cleaned up). That is because "the Commission does not have the authority to amend a statute" by adopting a reading contrary to binding precedent. *Id*. (cleaned up). So, if "the Commission's interpretation of § 3582(c)(1)(A) ignores the statute's plain text as construed in *Escajeda* . . . it must give way." *Id*.
>
> In promulgating § 1B1.13(b)(6), the Sentencing Commission exceeded its congressionally delegated authority. As the majority notes, Congress instructed the Commission to "promulgate general policy statements . . . describing what should be considered extraordinary and compelling reasons for sentence reduction." 28 U.S.C. § 994(t). But such policy statements must be "consistent with all pertinent provisions of any Federal Statute." *Id*. § 994(a). The

13

> Commission's attempt to include non-retroactive changes in law, which are both routine and uniformly applicable, in its definition of "extraordinary" is blatantly contrary to the plain meaning of that word.

*Id*. (some citations and quotation marks omitted).

After the United States' petition for rehearing *en banc* was denied, the mandate was issued on April 18, 2025. *See* Fifth Cir. Cause No. 23-40463 at [109].

In January 2025, the Fifth Circuit decided *United States v. Austin*, 125 F.4th 688 (5th Cir. 2025). The defendant in that case, Stokley Austin, pled guilty to conspiracy to distribute cocaine hydrochloride and cocaine base in violation of 21 U.S.C. § 846 and was sentenced to the then-applicable statutory minimum sentence of 20 years. *Id*. at 691. Years later, Congress, via the First Step Act, reduced the mandatory minimum sentence for Austin's offense to 15 years. *Id*. He filed a motion for compassionate release, arguing that the non-retroactive change in law was an extraordinary and compelling reason to support a sentence reduction. *Id*. The District Court for the Eastern District of Louisiana denied Austin's request, concluding that a non-retroactive change in the law does not constitute an extraordinary and compelling reason for compassionate release. *Id*.

On appeal, the Fifth Circuit affirmed, specifically holding that "Austin's argument is squarely foreclosed under our rule of orderliness: (A) we are bound by *United States v. Escajeda*, and (B) our later decision in *United States v. Jean* was wrong to say otherwise." *Id*.

Reiterating the points made in *Escajeda*, the court explained that a non-retroactive change in law that applies to every prisoner sentenced under that law is, "by definition, neither an 'extraordinarily severe exigency' nor 'unique to the life of the prisoner.'" *Id*. (quoting *Escajeda*, 58 F.4th at 186). As to the Sentencing Commission's enactment of Section 1B1.13(b)(6), which specifically states that non-retroactive changes in the law *may* be considered in this context, the court concluded:

14

> But that changes nothing. Just like any agency action, the Guidelines must bow to the specific directives of Congress. Thus, the Sentencing Commission cannot make retroactive what Congress made non-retroactive. And it certainly cannot do so through an interpretation of "extraordinary and compelling" that conflicts with the plain meaning of those terms. Moreover, the Commission does not have the authority to amend the statute we construed in *Escajeda* and its progeny.

*Id*. (citations and quotation marks omitted).

The court then specifically addressed *Jean* and concluded that the panel majority "openly disregarded *Escajeda* and its progeny." *Id*. at 693. Additionally, the court explained that *Jean* is nonetheless distinguishable:

> And in any event, *Jean* is distinguishable. There, the change in law resulted from a new judicial interpretation of § 4B1.1 of the Sentencing Guidelines. Here, however, the change in law resulted from a new statute that explicitly said it was non-retroactive. Thus, even if *Jean* could be somehow reconciled with *Escajeda* and its progeny, the former could not be applied beyond the specific facts and circumstances of that case.

*Id*. at 692 (citations omitted).

The day after the *Austin* panel opinion was issued, a separate order withholding the mandate was filed. *See* Fifth Cir. Cause No. 24-30039 at [59]. Three days later, the President of the United States commuted Austin's sentence by five years, thus bringing Austin's sentence in line with the current statutory minimum sentence applicable in his case. *See id*. at [78], Ex. 2. Austin's counsel then filed a motion to vacate, requesting that the panel opinion be vacated under the mootness doctrine. *See id*. at [78], Ex. 1. The motion was eventually denied, and the mandate was issued on April 9, 2025. *Id*. at [88]. Thus, the *Austin* panel opinion controls.

Taking into account this background, the parties' respective positions in this case are quite predictable. Miller and Kizer assert that this Court should adopt the reasoning of *Jean*, hold that the non-retroactive change in law is extraordinary and compelling, and ultimately grant

15

compassionate release under the circumstances. The Government urges the Court to rely on *Austin* and conclude that it lacks authority to modify the sentences.

The dilemma this Court now faces is that both parties have pointed to Fifth Circuit precedent to support their position. The Court therefore must determine which precedent to follow in resolving the pending requests.

In analyzing this issue, the Court again emphasizes the language of the now-effective Section 1B1.13(b)(6) and notes that it facially appears to support Miller and Kizer's position:

> UNUSUALLY LONG SENTENCE.
> If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b)(6).

The narrow question before this Court, though, is what consideration, if any, to give Section 1B13.13(b)(6) in light of Fifth Circuit precedent.

Though this is not a straightforward question, some district courts in this Circuit have already navigated this course. In August 2025, the District Court for the Eastern District of Texas addressed this issue in significant detail in *United States v. Avila*, 2025 WL 2210733 (E.D. Tex. Aug. 3, 2025). There, when faced with a similar factual circumstance—a prisoner arguing that his unusually long sentence, changes in the law, and his rehabilitation justified compassionate release—the district court surveyed the applicable law and ultimately concluded that the requested relief was not warranted. *Id*. at *1.

16

After addressing some preliminary matters, the district court, relying on *Austin*, concluded that "controlling precedent precludes the court's consideration of non-retroactive changes in *any* law, which accounts for most of the disparities in this case." *Id*. at *7 (citing *Austin*, 125 F.4th at 692) (emphasis in original). The district court continued, emphasizing the same distinction that the *Austin* panel recognized regarding the prior *Jean* decision: "The *Austin* court further observed that *Jean* was distinguishable. In *Jean*, the change in the law resulted from a new judicial interpretation of § 4B1.1 of the Guidelines, whereas in *Austin*, the change in the law resulted from a new statute that explicitly said it was non-retroactive, the First Step Act. . . In the case at bar, the change in the law at issue resulted from a new statute that explicitly stated it was non-retroactive—First Step Act[.]" *Id*. at *9 (citations omitted). The district court ultimately concluded that the conclusion in *Austin*—not the *Jean* conclusion—governed the disposition of the case and held that the length of the defendant's sentence could not be considered in analyzing the request for compassionate release. *Id*.

Finally, the district court noted that "[o]ther district courts within the Fifth Circuit have recognized that non-retroactive changes in sentencing law cannot be used to reduce a defendant's sentence merely because, in the judge's estimation, the defendant received an unusually long sentence that now represents a gross disparity from the sentence the court would likely impose today" and cited numerous cases to support that conclusion. *Id*. (citing *United States v. Torres*, 2025 WL 1654590, at *2, 5 (S.D. Tex. June 11, 2025); *United States v. Santivanez*, 2025 WL 1703429, at *4 (W.D. Tex. Apr. 29, 2025), adopted by 2025 WL 1700054 (W.D. Tex. June 17, 2025); *United States v. Matute-Carcamo*, 2025 WL 1677950, at *3 (S.D. Tex. June 13, 2025);

*United States v. Guillory*, 2025 WL 910518, at *3 (W.D. La. Mar. 24, 2025); *United States v. Warren*, 2025 WL 465320, at *4 (S.D. Miss. Feb. 11, 2025)).[5]

Reverting to the case *sub judice*, this Court concludes that it is duty bound to hold that the subject non-retroactive change in the law does *not* constitute an extraordinary and compelling reason to support compassionate release. In enacting the First Step Act, Congress specifically opted to make it non-retroactive. And the Fifth Circuit in *Austin* could not have been clearer as to the impact of Congress' decision in that regard: "[a] non-retroactive change in the law *cannot constitute an extraordinary and compelling reason justifying sentence reduction under 3582(c)(1)*." *Austin*, 125 F.4th at 693 (emphasis added).

Of course, *Jean* indicates to the contrary. However, unlike was the case in *Jean*, the change in law at issue here is a non-retroactive change in *statutory* law, as opposed to a change in the judicial interpretation of a Sentencing Guideline. Indeed, the change in law at issue in this case is the First Step Act—the same statute at issue in *Austin*. This case is much more akin to *Austin* and, again, the Fifth Circuit there was abundantly clear as to the effect of a non-retroactive change in statutory law.

Furthermore, based on the Court's review of the entire body of case law on this topic from the Fifth Circuit and district courts within the Circuit, it appears that *Jean*—not *Austin*—is the outlier. While acknowledging Miller and Kizer's arguments in opposition and being in some ways sympathetic to their plight, this Court's duty is to follow binding precedent. *See*, *e.g.*, *Belcher v. Fluor Enterprises, Inc.*, 2013 WL 499858, at *12 n. 10 (S.D. Tex. Feb. 8, 2013) ("[T]his Court's

---

[5] Other recent decisions have also reached the same conclusion. *See*, *e.g.*, *United States v. Helmstetter*, 2025 WL 3676986, at *5-6 (E.D. La. Dec. 18, 2025); *United States v. Leon*, 2025 WL 3496919, at *14-15 (E.D. Tex. Dec. 4, 2025).

sworn duty is to apply existing law, not to offer its own version of what the law should be."). Fulfilling that duty in this case leads to a denial of Miller and Kizer's request.[6]

*Conclusion*

The Court will not modify the sentences. The Motions [345, 366] are DENIED.

SO ORDERED, this the 7th day of January, 2026.

/s/ Sharion Aycock
SENIOR UNITED STATES DISTRICT JUDGE

---

[6] Miller and Kizer also argue that the Court can grant their request under the "other reasons" provision of Guidelines Section 1B1.13(b)(5). In light of the precedent cited herein foreclosing compassionate release under these particular circumstances, the Court will not grant relief under that alternative route either.